**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:06CV-72-M**

**WILLIAM H. FUNK II and**
**ALL AMERICAN INVESTORS GROUP, INC.**           **PLAINTIFFS**

**V.**         **MEMORANDUM OPINION AND ORDER**

**LIMELIGHT MEDIA GROUP, ET AL.**           **DEFENDANTS**

This matter is before the Court on a motion by Defendants, Limelight Media Group, Inc., Impart Mobile Media Division, David Lott, and Stewart Layton, to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) [DN 9]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

On February 2, 2005, Defendant, Limelight Media Group, Inc. (hereinafter "Limelight")[1], announced that it had signed a letter of intent to acquire a majority interest in OTR Media, Inc. (hereinafter "OTR"), a privately-held company incorporated under the laws of Nevada and with its principal place of business in Bowling Green, Kentucky. OTR

---

[1] Defendant, Limelight Media Group, Inc., is incorporated under the laws of Nevada and currently has its principal place of business in Seattle, Washington. In December of 2005, Limelight Media Group changed its name to Impart Media Group, Inc. Prior to moving its principal place of business to Seattle, Washington, Limelight maintained its principal place of business in Tennessee.

provides outdoor advertising services primarily through the placement of mobile billboards on tractor trailers. In addition to the placement of advertisements, OTR developed a proprietary system of tracking the mobile billboards in commercial markets.

The letter of intent provided that OTR would distribute 51 percent of OTR's outstanding capital stock in exchange for Limelight assuming "full operational and financial functions of the company." (Complaint, Exhibit A, February 2, 2005, Form 8-K.) Further, the letter of intent indicated that certain OTR shareholders, including Plaintiff All American Investment Group, Inc. (hereinafter "All American"), would "return to OTR Media issued shares which [would] be redistributed to existing shareholders of OTR Media." (Id.) Upon conclusion of the share distribution, Limelight was to own a majority interest in OTR, and OTR's operations and assets were to be posted on Limelight's books as a partially-owned subsidiary. (Id.)

On March 11, 2005, Limelight entered into a Stock Purchase Agreement with OTR under which Limelight acquired approximately 51 percent of OTR's outstanding capital stock. In consideration for the shares, Limelight agreed "to assume financial and operational control and responsibility of OTR from and after April 15, 2005." (Complaint, Exhibit B, March 11, 2005, Form 8-K.) Defendant, Stewart Layton, was appointed president of OTR. Defendant, David V. Lott, Chief Executive Officer and President of Limelight, was elected to serve on the board of directors of OTR. (Id.) Both Layton and Lott are residents of Tennessee. Plaintiffs allege that following the acquisition of OTR Media, Inc., by Limelight, OTR's proprietary information, including trade secrets, were turned over to the Defendants

pursuant to the Stock Purchase Agreement.

On August 28, 2005, Limelight filed a Form 8-K with the SEC indicating that as a result of several material breaches of the Stock Purchase Agreement by OTR, including OTR's failure to deliver to Limelight the OTR shares and to provide Limelight with access to the books and records, Limelight relinquished its right to receive the OTR shares, as well as financial and operational control it had assumed. (Complaint, Exhibit E, August 28, 2005 Form 8-K.)  Lott resigned from the Board of Directors of OTR on that date as well.

On December 14, 2005, Defendant Limelight announced a new division, Impart Mobile Media.  The Impart Mobile Media Division is led by former OTR President, Stewart Layton.  According to the press release, the Impart Mobile Media Division "is tasked with establishing the necessary infrastructure to capitalize on three primary business venues in the Fleet Marketing industry: (1) Truck-side Advertising; (2) Fleet Marketing; and (3) Fleet Asset and Retail Media Management." (Complaint, Exhibit F.)

As of a result of these actions, on April 21, 2006, Plaintiffs, William Funk and All American, filed suit in Warren Circuit Court, Bowling Green, Kentucky.  Plaintiffs are shareholders of stock issued by OTR. (Complaint at ¶¶ 1, 2.)  Plaintiffs allege a violation of the Kentucky Uniform Trade Secrets Act (KRS § 365.880), loss of pecuniary interest as a result of the Defendants' failure to honor the Stock Purchase Agreement and breach of that agreement, and loss of value of the stock relinquished by All American in consideration of Defendants' acquisition of OTR.  Plaintiffs seek a temporary restraining order and preliminary and permanent injunctions against the Defendants prohibiting them from

continuing to use trade secrets of OTR and ordering them to abide by and to enforce the acquisition of OTR. (Complaint at p. 8.) Additionally, Plaintiffs seek compensatory and punitive damages.

Defendants removed this action to this Court in May of 2006 and have now filed a motion to dismiss the complaint. Defendants argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because they do not have sufficient contacts with Kentucky to warrant the exercise of personal jurisdiction. Defendants further argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because (1) Plaintiffs do not have standing to bring claims for unfair competition and misappropriation of trade secrets; (2) the unfair competition claims are preempted by the Kentucky Uniform Trade Secrets Act; (3) Count III fails to state a claim for which relief can be granted; and (4) Impart Mobile Media Division does not have the capacity to be sued. These arguments will be addressed in turn.

## II. PERSONAL JURISDICTION

### A. Standard of Review

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is made, the plaintiff has the burden of proving that jurisdiction exists. Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). As a part of the burden of proof, a plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss. When an evidentiary hearing is held, the plaintiff must establish jurisdiction by a preponderance of the evidence. Id. at 417. When there is no evidentiary

hearing, the plaintiff must make only a prima facie showing and the pleading and affidavits are viewed in a light most favorable to the plaintiff. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998)). Federal courts apply the law of the forum state when determining whether personal jurisdiction exists. Youn, 324 F.3d at 417; Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). If personal jurisdiction exists under the forum state's long arm statute, the court then must determine whether personal jurisdiction would comport with the Due Process Clause of the U.S. Constitution. Id.

### B. Discussion

Both parties acknowledge that the issue of personal jurisdiction involves an inquiry into the reach of the forum's state long-arm statute and considerations of due process. The dispute concerns whether the Defendants' activities place them within the reach of Kentucky's long-arm statute.

"Whether or not personal jurisdiction is established in any instance depends upon the facts and circumstances of each particular case." Info-Med Inc. v. National Healthcare, Inc., 669 F. Supp. 793, 796 (W.D. Ky. 1987). In determining whether the exercise of personal jurisdiction over a nonresident defendant is authorized, a federal district court must first apply the law of the forum state. Clay v. Hopperton Nursery, Inc., 533 F. Supp. 476, 478 (E.D. Ky. 1982). If the state long-arm statute would permit the exercise of personal jurisdiction over the nonresident defendant, the court must examine whether the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. Id. Where the state legislature has authorized state courts to reach the full constitutional limits

in pursuing a nonresident defendant, these two inquiries become one. Id.

In Kentucky, the reach of the long-arm statute and considerations of due process are conflated as "'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" Wilson v. Case, 85 S.W.3d 589, 592 (Ky. 2002) (citation omitted). Thus, the Court need only consider whether jurisdiction is proper under the Fourteenth Amendment. National Grange Mut. Ins. Co. v. White, 83 S.W.3d 530, 533-34 (Ky. 2002); see also Tobin v. Astra Pharmaceutical Products, Inc., 993 F.2d 528, 541 (6th Cir.), cert. denied, 510 U.S. 914 (1993) (recognizing that the Kentucky long-arm statute has been understood to reach the full constitutional limits in entertaining jurisdiction over non-resident defendants).

"The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)). Depending on the type of contacts with the forum, personal jurisdiction may be either general or specific. General jurisdiction exists upon a showing that the defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 149 (6th Cir. 1997). Specific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum. Id.;

Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 & nn. 8-10 (1984). Plaintiffs do not contend that the Court has general jurisdiction over Defendants. Thus, only specific jurisdiction will be considered in this case.

The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). See also Theunissen, 935 F.2d at 1460; Franklin Roofing, Inc. v. Eagle Roofing and Sheet Metal, Inc., 61 S.W.3d 239, 240 (Ky. App. 2001).

In order to determine whether personal jurisdiction over the Defendants would be appropriate in this forum, the Court must examine their contacts in terms of the three criteria outlined in Mohasco. "The three-prong test is intended to be a framework for analysis and is not susceptible to mechanical application." Info-Med, 669 F. Supp. at 796 (citing Welsh v. Gibbs, 631 F.2d 436, 440 (6th Cir. 1980)). "Furthermore, the first and second prongs may be considered as one due to their inter-relatedness." Id.

First, Defendants must have purposefully availed themselves of the privilege of acting in the forum state or causing consequences in the forum state. Jurisdiction is proper under the purposeful availment requirement "where the contacts proximately result from actions

by the defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Moreover, the defendant's conduct and connection with the forum must be of a character that he or she should reasonably anticipate being haled into court there. Id. at 474. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Id. at 475.

"[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.'" LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting Burger King, 471 U.S. at 473 ). "[J]urisdiction may not be avoided merely because the defendant did not *physically* enter the forum state, so long as a commercial actor's efforts are purposefully directed toward residents of another state." Info-Med, 669 F. Supp. at 796.

Defendants assert that the Stock Purchase Agreement was a "one-shot transaction" that did not create "continuing relationships and obligations" between Defendants and Kentucky. In support of this argument, Defendants maintain that the Agreement contemplated that Limelight would purchase a majority interest in OTR and "assume financial and operational control of the company from [Limelight's] out-of-state headquarters." (Defendants' Reply at 7.) Furthermore, the Agreement provided that any disputes arising from the Agreement were to be adjudicated in Tennessee in accordance with

8

the laws of that State.[2] As a result, Defendants contend that the fact that a portion of the Stock Purchase Agreement's negotiations are alleged to have taken place in Kentucky does not constitute purposeful availment of the benefits and protections of Kentucky's laws.

Considering the facts alleged in the complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiffs have made a prima facie showing that the Defendants[3] purposefully availed themselves of the benefits and protections of Kentucky law. The record reflects that pursuant to the March 11, 2005, Stock Purchase Agreement, Limelight acquired 10.2 million shares of common stock of OTR, representing 51 percent of the outstanding capital stock of OTR. Negotiations related to the Stock Purchase Agreement occurred in both Kentucky and Tennessee. The documents filed with the SEC specifically describe OTR as "a privately held company based in Bowling Green, Kentucky that provides outdoor advertising services primarily through the placement of mobile billboards on tractor trailers." (Complaint, Exhibit B, March 11, 2005 Form 8-K.) The Stock Purchase Agreement provides that in consideration for the shares of OTR, Limelight agreed to "assume financial and operational responsibility" of OTR from and after April 15, 2005. (Complaint, Exhibit

---

[2]The existence of a forum selection clause within the Stock Purchase Agreement does not deprive this Court of personal jurisdiction over the Plaintiffs' claims. The enforcement of the forum selection clause against the Plaintiffs is not permitted given that they are not parties to the Stock Purchase Agreement.

[3]The Court has not specifically considered the contacts of Impart Mobile Media Division which is a division of Limelight. An unincorporated division lacks the legal capacity to be sued. Bingham v. Inland Division of General Motors, 1991 WL 224092, *1 (6th Cir. October 31, 1991), cert. denied, 504 U.S. 965 (1992). As such, all claims against it are claims against Limelight.

B, Stock Purchase Agreement and March 11, 2005 Form 8-K.)

While the Defendants contend that Limelight intended to assume all financial and operational control of OTR from Limelight's out-of-state headquarters, neither the Stock Purchase Agreement nor the SEC Forms support this assertion. It appears from the pleadings that Limelight along with the other Defendants reached out beyond Tennessee and created continuing obligations with "citizens of another state." The exhibits attached to Plaintiffs' complaint reflect that Limelight entered into negotiations in Kentucky, purchased controlling interest in a Kentucky-based company, and agreed to assume financial and operational control of a Kentucky-based company. Likewise, the individual Defendants became officers in a Kentucky-based company. Finally, Plaintiffs allege that these Defendants then misappropriated trade secrets obtained through the acquisition of this Kentucky-based company. These contacts were in no way "random," "fortuitous," or "attenuated." These facts satisfy the first prong of Mohasco.[4]

Second, the Plaintiffs must show that their cause of action "arose out of" the Defendants' activities in the forum state. "'An action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy.'" General Motors Corp. v. Ignacio Lopez de Arriortua, 948 F. Supp. 656, 663 (E.D. Mich. 1996)(quoting Creech v. Roberts, 908 F.2d 75, 80 (6th Cir. 1990), cert.

---

[4] In support of their argument that personal jurisdiction over the Defendants exists, Plaintiffs state that the majority of the shareholders of OTR reside in Kentucky. The Plaintiff has not cited any case law that establishes where a defendant intends to acquire a majority interest in a corporation it subjects itself to personal jurisdiction in every state in which the corporation's shareholders reside.

denied, 499 U.S. 975 (1991)).  The Sixth Circuit has noted that the first and second prongs can be considered as one due to their interrelatedness.  Here, the Court has no trouble concluding that the Plaintiff's cause of action arose from the Defendants' forum state activities.  Plaintiffs have alleged that by virtue of Limelight's purchase of the controlling interest of OTR, acquisition of OTR's trade secrets, and subsequent breach of the Stock Purchase Agreement, the Defendants were able to misappropriate OTR's proprietary information including trade secrets.  Clearly, Plaintiffs' cause of action is related to Defendants' solicitation and purchase of the majority interest of stock of OTR.  Thus, the facts of this case also satisfy the second prong of Mohasco.

Finally, the remaining inquiry is whether the acts of the Defendants or consequences caused by the Defendants have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  If the first two factors have been met, then an inference arises that the third factor is also present. See CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1268 (6th Cir. 1996).  Defendant Limelight engaged in a business transaction with OTR that occurred over a significant period of time.  Limelight, along with the individual Defendants, established a relationship with OTR from which they hoped to profit financially.  See Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001).  Then Limelight allegedly breached the Stock Purchase Agreement and, along with the individual Defendants, stole OTR's trade secrets.  These facts are sufficient to make it reasonable for Kentucky to exercise personal jurisdiction. Id.  Thus, the Court finds that all three prongs of Mohasco are satisfied, and Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## III. MOTION TO DISMISS

### A. Standard of Review

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiffs, accept all the factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claim that would entitle them to relief. Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996), cert. denied, 520 U.S. 1251 (1997). A judge may not grant a Fed. R. Civ. P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Wright v. MetroHealth Medical Center, 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996). A Fed. R. Civ. P. 12(b)(6) motion tests whether the plaintiffs have stated a claim for which the law provides relief. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994). It is against this standard that the Court reviews the facts set forth above.

### B. Discussion

**1. Standing**

Defendants assert that Plaintiffs lack standing to pursue a direct claim for unfair competition and misappropriation of trade secrets alleged in Count I and for "loss of pecuniary interest in OTR" alleged in Count II. Defendants argue that OTR, not Plaintiffs, is the proper party to bring these claims. The Court agrees.

"[A] shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation." Gaff v. Federal Deposit

Insurance Corp., 814 F.2d 311, 315 (6th Cir. 1987). The general rule is even applicable in cases where the individual is the sole shareholder. Trebilcock v. Elinsky, 2006 WL 414064, *3 (N.D. Ohio Feb. 21, 2006)(citing Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 603 (6th Cir. 1988)). "A suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a shareholder derivatively if the corporation fails to act, . . . since only the corporation has an action for wrongs committed against it." Gaff, 814 F.2d at 315. However, an exception to this rule exists if the shareholder can show "'an injury separate and distinct from the damage or injury suffered by other shareholders or the corporation as an entity.'" Trebilcock, 2006 WL 414064, *3 (citation omitted); Gaff, 814 F.2d at 315.

It is clear from the face of the Complaint that the trade secrets Plaintiffs allege were misappropriated belong to OTR, rather than to the Plaintiffs. See Complaint at ¶ 17 ("The Defendants . . . misappropriated by improper means trade secrets of OTR.") Therefore, any injury caused by Defendants' alleged unfair competition or misappropriation of trade secrets as alleged in Count I is a direct injury only to OTR, not the Plaintiffs. Similarly, with respect to Count II, Plaintiffs' "loss of pecuniary interest in OTR" as a result of the alleged breach of the Stock Purchase Agreement by Limelight is insufficient to provide Plaintiffs standing to sue. "A depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized . . . as the type of direct, personal injury which is necessary to sustain a direct cause of action." Gaff, 814 F.2d at 315. As recognized by the Sixth Circuit, diminution in the value of corporate stock "resulting from depletion of or injury to corporate

assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder." Id.

Plaintiffs respond that as a result of Defendants' raid upon OTR, there is essentially no corporation that can act to redress the wrongs of the Defendants, and that the OTR shareholders are all that are left to prosecute any claims for damages. However, the Plaintiffs fail to plead facts indicating that OTR Media, Inc., is no longer a corporation that can redress harms allegedly committed against it. From the facts set forth in the complaint, the Court finds that a shareholder derivative action is the proper method to redress the injuries set forth in Counts I and II.

For the reasons discussed above, the Court finds that the Plaintiffs have not alleged any injury in Counts I and II separate and apart from that suffered by OTR or its shareholders as a result of the alleged actions of the Defendants. As such, Plaintiffs lack standing to obtain relief on their own behalf; and Defendants' motion to dismiss Counts I and II for lack of standing is granted.

**2. Count III**

In Count III, Plaintiff, All American, alleges that in consideration of the Defendants' acquisition of the majority interest in OTR, Plaintiff "gave up 2,500,000 shares of 3,000,000 shares of stock it owned in OTR Media Group, Inc., prior to said acquisition." (Complaint at ¶ 27.) All American alleges that as a direct and proximate result of the Defendants' actions, All American "has lost the value of stock it relinquished in consideration of the Defendants' acquisition of the controlling interest in OTR Media, Inc., all to the detriment

14

and financial loss of All American . . . ." (Id. at ¶ 28.)  The Defendants argue that accepting the allegations in Plaintiffs' complaint as true, All American has failed to explain any legal theory under which Defendants would be liable to All American for loss it allegedly incurred as a result of relinquishing its OTR shares.  As a result, Defendants argue that Count III fails to state a claim upon which relief can be granted.

In as much as All American is alleging a breach of contract claim, such a claim fails because All American is not a party to the Stock Purchase Agreement and as a result, it does not have standing to sue for any alleged breach.  "'[A]s a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto.'"  Presnell Const. Managers, Inc. v. EH Const., LLC, 134 S.W.3d 575, 579 (Ky. 2004)(citation omitted).  Furthermore, while the Stock Purchase Agreement specifically references the fact that All American, along with another shareholder, would relinquish a majority of its stock, there is no indication in the Agreement that these shareholders constitute third-party beneficiaries who have standing to sue under the Agreement.  In fact, the Stock Purchase Agreement specifically provides: "No Third Party Beneficiaries: This Agreement is intended for the benefit of the parties hereto . . . and is not for the benefit of, nor may any provision hereof be enforced by, any other person."  (Complaint, Exhibit B, § 6.8.)   Therefore, Plaintiffs fail to state a claim for breach of contract.

Additionally, in response to the motion to dismiss, Plaintiffs argue that OTR Media

is still in the eyes of the Plaintiffs controlled by Defendants and therefore, Defendants are the proper party against which All American should look for redress. This argument is contrary to the exhibits attached to Plaintiffs' complaint. The August 28, 2005, SEC Form 8-K filed by Limelight specifically states that Limelight terminated the Stock Purchase Agreement as a result of OTR's breach of the Stock Purchase Agreement and relinquished its right to receive OTR shares, as well as any financial and operational control it had assumed. (Complaint, Exhibit E; see also Complaint, Exhibit F.) Therefore, pursuant to the exhibits attached to Plaintiffs' complaint, it would appear that the shares of stock in question are under the control of OTR and All American should seek return of the 2.5 million shares of stock from OTR.

"'In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" Lillard v. Shelby County Board of Education, 76 F.3d 716, 726 (6th Cir. 1996)(emphasis in original) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988)). Considering both the Plaintiffs' complaint and response to the motion to dismiss, the Court finds that the Plaintiff has failed to identify some viable legal theory for recovery by All American from the Defendants for the shares of OTR stock All American relinquished. For these reasons, the motion to dismiss Count III of Plaintiffs' complaint for failure to state a claim is granted.

### IV. CONCLUSION

For the reasons set forth above, the motion by Defendants to dismiss the complaint

for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is **DENIED** and the motion by Defendants to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)  [DN 9] is **GRANTED**.

cc: counsel of record